**ROHM & HAAS COMPANY,**
Plaintiff,

v.

**The PERMUTIT COMPANY,**
Defendant.

**Civ. A. No. 1551.**

United States District Court
D. Delaware.

Sept. 21, 1954.

Rehearing Denied Feb. 17, 1955.

Arthur G. Connolly and Thomas Cooch, Connolly, Cooch & Bove, Wilmington, Del., for plaintiff.

Caleb S. Layton and Henry M. Canby, Richards, Layton & Finger, Wilmington, Del., Clarence D. Kerr and W. P. Church-

ill, Fish, Richardson & Neave, New York City, for defendant.

RODNEY, District Judge.

This is a motion for summary judgment growing out of an action for patent infringement. The motion is to be determined by a consideration of the complaint, several affidavits filed by both parties, defendant's interrogatories propounded to plaintiff, certain requests for admissions which have remained unanswered, several depositions and a certified copy of the Patent Office file wrapper and contents of the patent in suit No. 2,629,710.

A prior infringement suit between the same parties upon the same patent but concerning other matters was considered in Rohm & Haas Co. v. Permutit Co., D.C., 114 F.Supp. 846.

The disposition of the present motion leads directly to the patent office proceedings. The essential facts are not in dispute but the difficulties arise from the application of the law to the admitted facts. Generally, the question involves consideration of two legal principles, viz., that of "file wrapper estoppel," as contended by the defendant, and that of "equivalents," as urged by the plaintiff. It is not that the two principles are necessarily in conflict, but rather how they both may be given the greatest measure of concurrent application.

The doctrine of "file wrapper estoppel" as contended by the defendant as applicable to this case may succinctly and perhaps inadequately be expressed as follows:

█ Where a patentee in his application to the Patent Office and in order to obtain a patent has been compelled or induced to alter and limit the claims of his patent, and the patent subsequently issues, such patentee thereafter may not recoup or recover those claims or that coverage which was voluntarily given up by him in obtaining his patent. So it has been held in Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 218, 61 S.Ct. 235, 238, 85 L.Ed. 132:

"Where the patentee in the course of his application in the patent office has, by amendment, cancelled or surrendered claims, those which are allowed are to be read in the light of those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed. * * *"

█ The principle of "file wrapper estoppel" is not controverted by the plaintiff, but the plaintiff contends it is not applicable to this case. The plaintiff contends that the controlling doctrine, applicable in this case, is that of "equivalents." This doctrine, its meaning and scope, is quite fully discussed in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097. It has been said that the essence of the doctrine is that one may not practice a fraud upon a patent; that a patentee may protect his invention or patent against one who by a new device performs substantially the same function in substantially the same way to obtain the same result and that if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same, even though they differ in name, form or shape. They are thus said to be equivalents.

To apply these principles we must consider the relevant facts.

In 1949 one Charles H. McBurney made application for a patent which subsequently was issued on February 24, 1953 as No. 2,629,710, upon which this suit is based. The invention generally related to insoluble resins containing reactive halogen atoms which may be readily replaced by polar groups to produce insoluble ion-exchange resins. The invention concerned an intermediate chemical product not commercially used as such but utilized in the production of ion-exchange resins having commercial value, inter alia, in the treatment of water.

It is not necessary to give in detail the proceedings in the Patent Office. It is quite clear that the patent was not granted in the terms and language in which the application was made. Upon objection of the Examiner and from his refusal to issue the patent in the terms of the application and of the filed claims, no appeal or other proceedings were taken but various amendments to the application were made, resulting in the ultimate issuance of the patent.

In the field of organic chemistry the molecules of a simple polymer usually form long strings or chains. When these molecules are exposed to certain other substances, the molecular arrangement is changed and the substance causing the change is called a cross-linking agency.

For the purposes of this case it may be sufficient to state that the defendant contends that the original claims of the application were broader with reference to the cross-linking agency involved in the chemical process than were disclosed in the patent as ultimately issued.

As ultimately issued the patent generally describes claims for a "polymer of an aromatic monovinyl hydrocarbon cross-linked by copolymerization with an aromatic polyvinyl hydrocarbon." The example given of the aromatic polyvinyl hydrocarbon constituting the cross-linking agency is divinyl benzene (herein called DVB).

The defendant contends that it is clearly established that the process of the defendant utilizes as a "cross-linker" ethylene glycol dimethacrylate (EGDM). The defendant contends its cross-linker is not "aromatic" and is not a "hydrocarbon" and does not possibly come within the claims of the patent. The defendant contends that the plaintiff, having given up the claim to the broader cross-linking agency as shown in the original application and accepted without appeal that which the defendant contends is a narrower claim as shown by the patent, may not now recoup or recover that which has been given up. The defendant contends in essence that the plaintiff is limited by file wrapper estoppel from claiming any cross-linking agency other than an aromatic hydrocarbon.

The plaintiff, on the other hand, denies that it is seeking to recoup or recover anything that it gave up by amendment to its patent application. It insists that it is only seeking to protect that which was given by the patent itself. The plaintiff contends that in the Patent Office it had asserted the right to claim general types of cross linking without itemization thereof, but that upon objection of the Examiner a particular kind of cross-linking agency was adopted. The plaintiff contends that the process of the defendant performs precisely the same function in substantially the same way to obtain the same result as the allowed patent of the plaintiff and that such practice of the defendant and questions relative thereto are subject to the doctrine of equivalents.

██ I am of the opinion that the doctrine of equivalents is to be considered, where applicable, in connection with any patent whether the patent issues in the exact form as its original application or after amendment. Of course, the allowed claims must be read in the light of what was given up by amendment and what was given up cannot be recouped but an allowed claim, after being read in the light of what was given up and subject to any deduction or diminishments brought about by an amendment, *draws to itself in its then form the principles of equivalents.*

██ In Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 857, 94 L.Ed. 1097, the Supreme Court said, "A finding of equivalence is a determination of fact." If it be true that equivalence is a question of fact, then it must be true that a determination of the nature of those substances upon which equivalence would be based or gauged must also be determined as a question of fact. It must also be true, I think, that the constituent elements of the approved and granted claim as compared with any elements or features given up by the amendment must also be a question of fact.

This is a motion for summary judgment. If a material controverted issue of fact appears, the motion may not be granted. Such material controverted issue of fact appears in this case. If the process of the defendant might have been covered by the original claims of the plaintiff, but which said claims were given up by the amendments in the Patent Office and such process is only covered by the terms of the patent as issued when read in the light of the claims given up by amendment, then a given situation exists. If, on the other hand, the process of the defendant is covered by the terms of the patent as granted, either expressly or by application of the doctrine of equivalents and no recourse is necessary to that which was given up by amendment, and when read in the light of those amendments, then a different situation exists.

Because a material controverted question of fact exists the motion for summary judgment must be denied.