BICKELL et al. v. SMITH–HAMBURG–SCOTT WELDING CO. OF NEW YORK, Inc., et al.

No. 444.

Circuit Court of Appeals, Second Circuit.

Aug. 25, 1931.

Charles H. Wilson, of New York City, for appellants.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds and Leslie B. Young, both of New York City, of counsel), for appellees.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is a suit for patent infringement brought by Bickell, as owner of the patent, and Kramer, as exclusive licensee thereunder, against two corporations, each of which has a place of business within the Eastern district of New York and is charged with having there committed acts of infringement.

The patent in suit relates to a tank truck for transporting and delivering inflammable liquids such as gasoline. The specifications refer to deficiencies in trucks of the prior art which provided for drawing off the liquid by gravity through outlets at the bottom of the tank, with consequent danger of leakage if the outlet faucets become damaged or defective. In certain cities such tank trucks were forbidden to operate and gasoline was required to be delivered in drums on stake wagons—a method uneconomical and also fraught with danger. These difficulties the inventor proposed to overcome by drawing off the gasoline through the top of the tank by siphonic action. The tank of the patent is described as divided into compartments, each having individual discharge pipes leading to a common discharge pipe above the gasoline and operating by siphonic flow, which is initiated by a pump and allowed to continue, once it has been started, through a by-pass around the pump. Associated with each compartment is a control valve, and these valves are operable selectively so that liquid from any compartment can be discharged at will siphonically, while the other compartments remain closed.

Of the five claims in suit, it will suffice to quote claims 3 and 23, which read as follows:

"3. A gasolene delivery vehicle having in combination multiple tank compartments on the vehicle, pipes in the respective compartments constituting intake limbs of a siphon, a delivery limb on the vehicle, a pump connected with the siphon, means for by-passing the pump when flow has been established, and means for selecting the compartments."

"23. A tank comprising a plurality of compartments, a siphon having a plurality of intake limbs terminating in different compartments, means for selectively controlling flow from the individual compartments, said selective means being operable at a point remote from said valves, means for initiating flow through the siphon, and a by-pass around said means."

The District Court found that each of the defendants had infringed the claims in suit by making tank trucks of the type illustrated in Exhibit 9. If the claims in suit are valid, we have no doubt of the correctness of the finding of infringement.

The defendants' first challenge to validity of the patent is based upon the contention that the idea of siphonic discharge was not a part of Hayes' conception when he filed his application on May 7, 1923; that his original disclosure showed that he contemplated either pumping out or forcing out by compressed air the contents of the tank compartments; and that the introduction of the idea of siphonic discharge, made by amendment in 1926 and after the fire department officials of New York City had published specifications calling for this type of tank truck,

changed the whole tenor of the original application and was not the invention of Hayes.

It is true that the original application did not mention the word "siphon," and that only one of the seventeen original claims could possibly be read as claiming a tank truck discharging by siphonic action. The original specifications and drawings disclosed a tank divided into compartments and equipped with two systems of piping, one for discharging the gasoline, and the other a fire-fighting apparatus. Most of the claims were directed to the fire-fighting equipment or to that in combination with the discharging apparatus. In December, 1923, the Patent Office required a division between the fire-fighting device and the gasoline discharging device. Thereupon all claims were canceled except 13, 15, and 16, and the fire-fighting device dropped out of the case. Claim 13 called for a tank truck having its tank divided into "compartments with closed bottoms containing pockets, and delivery piping having valved branches extending through the tops of the compartments with their inlets in said pockets, and means for raising the contents of each compartment over the top to pass out through the delivery line." The means shown were a pump or, alternatively, compressed air. There was a by-pass around the pump which was to be used when the gasoline was to be forced out by compressed air. Hayes contends that it was also to be used as soon as the pump had primed the siphon. Hayes, Bicknell, and Brandenburg testified that siphonic discharge was the essence of Hayes' invention and was explained by him to his attorney Brandenburg who drafted the application. There is no doubt whatever that Hayes had the idea long before the amendment of 1926, supported by his supplemental oath, for in the spring of 1924 he built and used the tank photographically shown in Exhibit 3. This operated siphonically, with a hand pump to start the siphon. Hayes claimed a patent for it (Exhibit 6), but contends that this was simply a narrow improvement on his application for the patent in suit; the pump in Exhibit 6 being movable to connect with one compartment after another. While it seems somewhat strange that the original application did not in express terms refer to "siphonic discharge," the specifications and drawings show a machine which could operate in that way, and claim 13 can be read as claiming it. Therefore the amendment of 1926 did not introduce a new and previously undisclosed invention. This conclusion finds further support in the allowance by the Patent Office of the amendment without objection to it as containing new matter (see General Electric Co. v. Cooper Hewitt Electric Co. [C. C. A.] 249 F. 61, 64), and in the fact that no such point was taken in the interference proceedings between Hayes and Kramer.

A second challenge to validity is the contention that the apparatus disclosed in the patent in suit is inoperative. This objection rests primarily on the fact that the tank compartments are not shown to be provided with air vents. It is common knowledge that air must be admitted when liquid is being discharged from its container, whether by gravity or by siphonic action. Indeed, this necessity is so obvious that many of the patents introduced as prior art fail to illustrate or mention air vents. To provide vents by petcocks or by removal of the manhole covers on the top of the compartments would be no more than a matter of common skill. It is self-evident that the manhole cover could be opened to admit air when siphonic flow was to be initiated by the pump. When it was to be initiated by compressed air pressure, of course the covers would have to be closed until after the discharge pipes were filled with liquid. The failure to mention such obvious matters should not invalidate the patent.

Inoperativeness is also alleged because the patent does not describe any operative means for selecting the compartment to be emptied, or means whereby the selective means may be operated from a remote point. Figure 2 of the drawing shows the valves 19, and the specifications state that "operating connections, represented schematically at 20 in Fig. 2, preferably extend from the valves to the cab 21 or forward part of the vehicle, so that the valves may be operated from a convenient point." Defendants' expert admitted that the rigging of cords or rods to operate valves from a distance is a perfectly obvious thing (fol. 813). A patentee is only required to describe his invention in such terms as will enable those skilled in the art to use it. Hayes has met this requirement, and the contention that the apparatus is inoperative cannot be sustained.

The appellants' argument, based on estoppel because of the cancellation of certain claims, is also unsound. The patentee is not seeking to extend the claims in suit so as to make them identical in scope with the rejected claims.

It is also contended that the claims in suit were anticipated by prior art patents, of

which some twenty were introduced in evidence. It is unnecessary to analyze them in detail. All of them which relate to tank trucks show bottom outlets. Other patents show siphons applied to draining mines, ships, a locomotive tender, etc. None of them shows the combination of elements disclosed in the patent in suit. As so frequently happens in patents for a combination of elements, all the elements were old. It is urged that Hayes' combination of them was a mere "aggregation" requiring no inventive skill. But that catchword is of little aid in determining whether invention is present, as we recently explained in Sachs v. Hartford Electric Supply Co. (C. C. A.) 47 F.(2d) 743, 748. Hayes' construction was something new; it solved a problem with which others had long been struggling; it was quickly recognized as meeting the need, and has gone into quite extensive use. We agree with the court below that. it was not anticipated by the prior art and that the conception of it involved invention.

Accordingly the decree is affirmed.